IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF
FLORIDA TAMPA, DIVISION

**Case No.**

DARLA SOLOMON, individually
and on behalf of all others similarly
situated,

     Plaintiff,

v.

SUNCOAST CREDIT UNION,

     Defendants,

_____/

## SUNCOAST CREDIT UNION 'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act of 2005 ("CAFA")), 1331, 1441(a), 1446, and 1453, Defendant, Suncoast Credit Union  ("Defendant" or "Suncoast"), hereby removes the above-captioned action, presently pending in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County Florida, to the United States  District Court for the Middle District of Florida, Tampa Division.  As grounds for removal to this Court, Defendants state as follows:

I.  **BACKGROUND**

1.  On March 2, 2023, Plaintiff, Darla Solomon ("Plaintiff" or "Solomon")

1

filed a Class Action Complaint (the "Complaint"), individually and on behalf of all others similarly situated against Suncoast in the Circuit Court, Hillsborough County Florida, Case No. 2023-CA-001865. Suncoast was served with a Summons and copy of the Complaint on March 12, 2023, for which response was due on April 1, 2023. Plaintiff granted Defendant extension to respond.

2.      Solomon is a resident of Palm Beach County, Florida.

3.      Suncoast is a state- chartered credit union with its principal place of business in Hillsborough County, Florida.

4.      Plaintiff's individual allegations include the following:

a.      Suncoast is a state-chartered credit union (Complaint, ¶ 11);

b.      An unauthorized party opened up a checking and savings account at Suncoast in Solomon's name using her personal identifying information ("PII") (Complaint, ¶46);

c.      That unauthorized parties capitalized on Suncoast's "unsound practices" by using Suncoast's "SunNet Online Banking" platform to open the accounts with stolen PII (the "Unauthorized Account Opening") (Complaint, ¶ 5, 25);

d.      Suncoast's actions violated statutory guidelines of Federal Trade Commission ("FTC") and standards of care imposed thereby (Complaint, ¶69-75);

e.      Plaintiff's brings single count negligence action against Suncoast for violation of FTC standards (Complaint ¶9, 96-87).

5.      Plaintiff's class representation allegations include the following:

a.      Claim for all consumers who never banked with Suncoast[1] but discovered that Suncoast opened up accounts using their PII Complaint, ¶ 1, 5,

---

[1] As a matter of common sense, this  necessarily includes non-Florida citizens. See Heretcik v. Publix Supermarkets Inc. 841 F. Supp. 2d 1247 (M.D. 2012)(common sense confirms that non- Florida Citizens use Publix ATM located in Florida)

25);

      b.    Suncoast operates 75 branches in Florida and provides over one million consumers with various accounts including checking and savings (Complaint, ¶ 17).

      c.    Unauthorized Account Opening in names of class members through Suncoast online banking platform, (Complaint, ¶ 24-28)

      d.    Class includes Florida Citizens who had a checking or savings account under their identity with Suncoast but without their authorization using PII for Unauthorized Account Opening via Suncoast Sun Net Online Banking Platform" (Complaint, ¶ 76). [2]

      e.    The exact number of the class is not known, but Plaintiff asserts that there are millions, if not thousands of potential class members" (Complaint, ¶ 17, 78).[3]

      f.    Class members bring same, single negligence action based on FTC violations (Complaint ¶ 9, 85-104).)

## II.    <u>FEDERAL REMOVAL JURISDICTION</u>

### A.    <u>Class Action Fairness Act</u>

This action is removable pursuant to CAFA, as codified in 28 U.S.C. § 1332(d).

CAFA provides that United States District Courts have jurisdiction over putative class-action complaints where the number of putative class members is 100 or more, the matter in controversy exceeds the sum value of $5,000,000 (exclusive of interest and costs), and diversity exists between at least one defendant and any member of the putative class.  *See* 28 U.S.C. § 1332(d)(2)(A)

---

[2] As set forth in attached Declaration of Suncoast (Exhibit No.1), many Suncoast accounts are opened by non-Florida citizens.

[3] As set forth in attached Declaration of Suncoast (Exhibit No. 1), thousands of account members are not Florida Citizens.

& § 1332(d)(5)(B).

**1. Number of Class Members is more than 100**.  This class is  unequivocally larger than 100 members because Plaintiff asserts that there are millions, if not thousands, of potential class members" (Complaint, ¶ 17, 78).

2. **Amount in Controversy is satisfied**. The claims of individual class members are aggregated when determining whether CAFA's jurisdictional threshold is met. *See* 28 U.S.C. § 1332(d)(6).  Here, the aggregate amount in controversy is based on thousands of members, up to one million consumers, all of whom are aggregated (Complaint, ¶¶ 17, 78). Valuation must be based at time of removal. Vega v. T-Mobile USA Inc. 564 F. 3d 1256, 1268, n. 12 (11th Cir. 2009). In addition, punitive damages can be considered by the Court in calculating amount in controversy. See e.g. Frederick v. Hartford Underwriters Ins. Co., 683 F. 3d 1242 (10th Cir. 2012); Blockbuster v. Galeno, 472 F. 3d 53 (2d Cir. 2006); Kerbs v. Safeco Insurance, 2011 WL 6012497 (W.D. Wash. 2011)

Plaintiff seeks unspecified damages except those exceeding $30,000.00 to satisfy jurisdictional limit for her claim (Complaint, ¶ 12). Other than this statement, Plaintiff does not allege total damages except that it includes "statutory damages" and "punitive damages" (Complaint, ¶ 9). Because the amount in controversy is not facially apparent to determine whether removal is improper, the Court may look to the notice of removal or any supporting documents. Pretka v.

Kolter City Plaza II Inc. (11th Cir. 2010).  Suncoast has filed attached Declaration (**Exhibit No.1**). The amount in controversy should be shown by preponderance of the evidence and may include "reasonable deductions, reasonable inferences, or other reasonable   extrapolations" Pretka at 754.  Courts may also use common sense in determining whether a case meets federal jurisdiction requirement for removal. Roe v. Michelin Inc, 613 F. 3d 1058 (11th Cir. 2010)

In the present case, and based on common sense, the preponderance of evidence shows damages exceeding $5,000,000.00 based on reasonable inference. According to the Complaint, the class includes all consumers who "never had" an account with Suncoast but had fraudulent account opened since formation of Suncoast "and" all Florida Citizens who "ever had" checking or savings account at Suncoast without their authorization. Implicitly, this would cover the time period from formation of Suncoast to the present date--approximately 100 years! According to the Complaint, class members number in the thousands, if not millions, covering nearly 100 years of Suncoast existence (Complaint, ¶17, 78). Added to this would be punitive and statutory damages for each of the thousands and thousands of members.

As set forth in Declaration of Suncoast, total account balances currently exceed well over $5,000,000.00. If expanded over 100 years, and then,  when punitive and statutory damages are added, common sense would dictate a claim

well over $5,000,000.00 to satisfy CAFA removal.

3. **Minimal Diversity exists**.  Although CAFA removal provisions should be construed strictly, the "minimum diversity requirement" represents a significant expansion of federal jurisdiction over class actions. Lowery v. Alabama Power Co., 483 F. 3d 1184 (11th Cir. 2007).   To determine whether minimal diversity exists, the, citizenship of all class members, named and unnamed, is considered. *See* 28 U.S.C. § 1332(d)(1)(D). For purposes of determining diversity, the Court may look to the notice of removal and any documents attached thereto, which is Declaration of Suncoast.

In this case, there is minimal diversity.  As set forth in Suncoast Declaration, Suncoast, Florida largest credit union, was founded in 1934, and through the date of this declaration, has 75 branches throughout Florida with over one million members[4] (the "Members").  The Members have opened many  share accounts (checking and savings) at Suncoast during this period, which may include accounts that were not authorized by the Members. See Declaration of Suncoast.  The Members include "many" that (1) have no Florida addresses; 2) are not Florida residents; 3) are not Florida Citizens; and  4) do not identify as Florida Citizens despite class designation to contrary. Id.   Membership is not limited to

---

[4] Common sense dictates that at least "one" is not a Florida citizen.

Florida Citizens and accounts remain open even after moving to other states to establish citizenship. Id. Since the filing of the lawsuit on March 2, 2023, many of the Members who may have identified as Florida Citizens have moved and/or planning move from Florida with no intent to return. Id. Going forward, Suncoast would anticipate that many of the Members who currently identify as Florida citizens will also move from Florida with no intent to return and/or are currently planning such move with no intent to return. Id.  Based thereon, it is undisputed that many of the class members, potentially thousands and thousands, are not Florida citizens. Id.  Thus, there is minimal diversity to satisfy CAFA.

### B. **FEDERAL QUESTION JURISDICTION**

On the face of the Complaint, this is a negligence action based on standards of care established by FTC under the FTA, 15 USC § 41, et. seq.,  and purportedly violated by Defendant (Complaint¶¶69-75, 96, 97). As alleged by Solomon, Suncoast violated these statutory and regulatory standards by allowing Unauthorized Account Opening, unfair trade practices, and failing to use reasonable care in safeguarding PII (Complaint, ¶¶ 73, 96, 97).  Indeed, Plaintiff is seeking "statutory damages" based on these violations[5] (Complaint, ¶ 9).

---

[5]No other statutory basis is asserted for the statutory damages except violation of the FTA and FTC regulations.

Jurisdiction to enforce FTA violations is vested with the FTC and the proper jurisdiction of Federal Court per the FTA. 15 USC §57b. In other words, in its simplest sense, this is an action for negligence "per se", based on violation of federal statute (FTA) and/or federal regulations of the FTC for which relief sought includes statutory damages. As a result, the complaint substantially involves a dispute over the validity, effect, and construction of federal law to create a "federal question" basis for removal. See Dunlop v. G & L Holding Group, Inc., 381 F. 3d 1285 (11 Cir. 2004)

### III.   PROCEDURAL MATTERS

A. **Removal is Timely**.  Pursuant to 28 U.S.C. §1446(B)(2)(b), "Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal." In the present case, the notice of removal was filed within 30 days of Suncoast being served with the Complaint. Thus, removal is timely.

B. **Removal to Proper Court**.  This Court is the appropriate court to which the action must be removed because it is part of the "district and division embracing the place where" Plaintiff filed the Complaint in this action: Hillsborough County, Florida. *See* 28 U.S.C. § 1446(a).

C. **Filing and Service**. A copy of this Notice of Removal will be filed contemporaneously with the Clerk of the Circuit Court for the Thirteenth

Judicial Circuit in and for Hillsborough County, Florida, and will be served contemporaneously on all counsel of record, as required by 28 U.S.C. § 1446(d).

       D. **Pleading and Process**.  As required by 28 U.S.C. § 1446(a), copies of all state court process, pleadings, and orders, are attached hereto (Composite **Exhibit No. 2**) . Defendants reserve the right to amend or supplement this Notice of Removal.

       **WHEREFORE**, Suncoast hereby removes this action from the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 2023-CA-001865, to the United States Court District Court for the Middle District of Florida.

      Dated this 10th day of April 2023.

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 10th day of April 2023, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the Court via CM/ECF, which will send notice of electronic filing to all counsel of record.

                  COLE, SCOTT & KISSANE, P.A.
                  Counsel for Defendant, Suncoast Credit Union
                  4301 West Boy Scout Boulevard
                  Suite 400

Tampa, Florida 33607
Telephone (813) 509-2691
Facsimile (813) 286-2900
Primary e-mail:
daniel.nicholas@csklegal.com


By:  s/ Daniel A. Nicholas
DANIEL A. NICHOLAS
Florida Bar No.:  0847755

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA Divison

DARLA SOLOMON, individually and
on behalf of all others similarly
situated,

     Plaintiff,

v.

SUNCOAST CREDIT UNION

     Defendants.

_____/

## DECLARATION OF SUNCOAST CREDIT UNION

The undersigned, Scott Binder, pursuant to 28 U.S.C. 1746, hereby declares as follows:

1.  My name is Scott Binder.  I am over the age of twenty-one (21), a resident of the State of Florida,  and otherwise *sui juris*.

2.  I am employed by Suncoast Credit Union ("Suncoast") in the capacity of Vice President of Member Engagement and ITM Delivery, make this Declaration with full authority, and on behalf of Suncoast.

3.  This Declaration  is based on my personal  knowledge and upon review of certain business records kept by Suncoast in the ordinary course of regularly conducted business. The records, which are  strictly protected from disclosure  as a matter of financial privacy pursuant to Florida Statutes Section 655.05  were made at or near

1

**EXHIBIT**

tabbies

1

the time of the occurrence of the matters set forth therein by, or from information transmitted by, a person with knowledge of those matters, and it was the regular practice of Suncoast to  make such records.

4.  Suncoast, Florida's largest credit union, was founded in 1934, currently has 75 branches throughout Florida, and has well over one million members (the "Members").

5.  During this period, the Members have opened "many" share accounts, which include  checking and saving, with total balances "well exceeding" $5,000,000.00

6.  Although Suncoast accepts Members that "live -work- worship" in Florida, it also accepts many Members who reside outside of Florida if related to the Florida Members or are members of various national trade organizations.

7.  Suncoast does not require Florida residency, much less, Florida citizenship, for active membership, and does not close membership if a Member moved out of state or became citizen of different state.

8.  For this reason, "many" of the Members with active member accounts are not Florida citizens and are citizens of other states.

9.  In addition, since the filing of the lawsuit on March 2, 2023, "many" of the Members who identified as Florida citizens have moved to other states and/or are planning to move to other states with no intent to return.

10.  Going forward, Suncoast would anticipate that "many" of the Members who currently identify as Florida Citizens will also move to other states with no intent to return and/or are currently  planning such move with no intent to return.

11.    I declare under the penalty of perjury that the preceding is true and correct.

Executed on April 7,  2023.

By:  _/s/ ***Scott Binder***_____

Scott Binder

Vice President
Member Engagement and ITM Delivery

3